# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2066
_____

United States of America

*Plaintiff - Appellee*

v.

Nathan Daniel Newell

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: November 15, 2018
Filed: February 12, 2019
_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Nathan Newell pled guilty to possession and attempted possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Newell's advisory guidelines range was 87 to 108 months of imprisonment. The district court[1]

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

sentenced Newell to 87 months of imprisonment to be followed by a 5-year term of supervised release. Newell's period of supervision began on July 25, 2017. In this appeal Newell challenges the district court's findings relating to violations of two special conditions of supervised release as well as the court's imposition of certain modified special conditions. We affirm.

## I.    Background

In March of 2011, Newell pled guilty to attempted possession and possession of child pornography after an investigator downloaded an image from Newell's account over the peer-to-peer file sharing client LimeWire. The district court found that Newell had a total offense level of 29, was in criminal history Category I, and that he had an advisory guideline range of 87-108 months. Among the upward adjustment from the base offense level were increases for distribution of the child pornography, use of a computer, and possession of material involving sadistic and masochistic conduct. Newell was sentenced to 87 months of imprisonment to be followed by a 5-year term of supervised release. Newell began his period of supervised release on July 25, 2017.

In April of 2018, Newell's probation officer filed a petition to revoke Newell's supervised release. At the revocation hearing, the court found that Newell had violated the following conditions of supervised release: Violation 1 alleged that Newell failed to comply with his mental health and sex offender treatment by missing a Sex Offender Treatment Program appointment on December 20, 2017; Violation 2 alleged that Newell had contact with a child under 18 on three separate occasions; and Violation 3 alleged that Newell failed to truthfully answer questions from his probation officer regarding his contacts with his uncle's grandson.

At the hearing, Newell's probation officer testified that Newell described contact with a child selling Girl Scout cookies inside a Walmart as "a little mistake."

The probation officer also testified that Newell was not forthright with the officer about whether he had been around his uncle's minor grandson at all or left alone with him on two separate occasions. Newell later admitted these contacts before and after undergoing a polygraph examination as part of his treatment plan.

The district court imposed a six-month term of GPS monitoring and home confinement. The district court also imposed several modified special conditions. The two that are at issue on appeal are Special Conditions 2 and 5. Special Condition 2 requires Newell "to submit to periodic polygraph testing at the discretion of the United States Probation Office as a means to ensure that the defendant is in compliance with the requirements of the defendant's supervision or treatment program." Special Condition 5 forbids Newell from "accessing an Internet connected computer or other electronic storage device with [I]nternet capabilities without the prior written approval of the United States Probation Office and based on a justified reason."

Newell argues that the district court erred in finding two supervised release violations and abused its discretion in imposing Special Conditions 2 and 5.

## II. Discussion

We review a district court's modification of supervised release conditions for an abuse of discretion. United States v. Heidebur, 417 F.3d 1002, 1004 (8th Cir. 2005) (citing United States v. Carlson, 406 F.3d 529, 531 (8th Cir. 2005)). "District courts are normally afforded wide discretion in imposing terms of supervised release." Id. (quoting United States v. Kent, 209 F.3d 1073, 1075 (8th Cir. 2000)). A district court's subsidiary "findings of fact as to whether or not a violation occurred" are reviewed for clear error. United States v. Petersen, 848 F.3d 1153, 1156 (8th Cir. 2017) (citing United States v. Boyd, 792 F.3d 916, 919 (8th Cir. 2015)).

## A. Violations of Supervised Release Conditions

Newell argues that the district court erred in finding he committed two of the alleged violations.[2] First, while Newell admits that he missed a meeting that was part of his sex-offender treatment plan, he argues that as a matter of law missing one meeting is not a failure to participate in that treatment. The district court acted within its wide discretion when it found that Newell's failure to attend a treatment session violated the special condition requiring him to comply with his treatment plan. A plain interpretation of the supervised release condition forecloses Newell's argument that as a matter of law he was entitled to miss a portion of that program.

Second, Newell argues that he did not breach the prohibition on contact with minors when he met the child selling cookies in a Walmart because his discussion was "incidental contact" in a commercial setting. We have previously upheld conditions that generally restricted contact with minors but permitted "incidental contact while making purchases at a retail establishment." United States v. Muhlenbruch, 682 F.3d 1096, 1104 (8th Cir. 2012). We agree with the district court that permissible "incidental contact while making purchases" refers to circumstances such as "where you go into the Hy-Vee store because you need to buy your goods to sustain your livelihood and it happens to be a checkout clerk who is under the age of 18." The district court did not abuse its discretion in finding that Newell's discussion with a minor non-employee inside of a store was intentional, rather than incidental, contact.

---

[2]Newell does not appeal the district court's findings that he committed four other violations of his conditions of supervised release, including violations relating to time spent with his uncle's grandson and whether he was truthful with his probation officer.

## B. Modifications of Special Conditions of Supervised Release

"[A] district court may order a condition of supervised release beyond those listed in § 3583, provided that such a condition is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and is consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Mark, 425 F.3d 505, 507 (8th Cir. 2005) (discussing 18 U.S.C. § 3583(d)). To impose a special condition a district court "must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as 'to ensure that the special condition satisfies the statutory requirements.'" United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011) (quoting United States v. Curry, 627 F.3d 312, 315 (8th Cir. 2010)). On appeal, however, "reversal is not required [due to] a lack of individualized findings if the basis for the imposed condition can be discerned from the record." United States v. Thompson, 653 F.3d 688, 694 (8th Cir. 2011).

Newell seeks to vacate Special Conditions 2 and 5 of the modified special conditions of supervised release. Special Condition 2 requires periodic polygraph testing at the direction of Newell's supervising probation officer and Special Condition 5 prohibits Newell from accessing the Internet without the prior written approval of his supervising probation officer. We find the bases for both conditions are easily discernable from the record.

Newell has demonstrated a pattern of untruthfulness with his probation officer. Newell admitted to some of the violations at issue in this case just before he was scheduled to undergo a polygraph examination related to his sex offender treatment program, suggesting that polygraph testing causes Newell to be more candid than usual. Newell's pattern of dishonesty regarding his contacts with minor children combined with Newell's previous admissions when scheduled to undergo polygraph

testing are facts within the record that sufficiently satisfy the statutory requirements for imposition of Special Condition 2. Under these circumstances, the district court did not abuse its discretion. See Wiedower, 634 F.3d at 494 (explaining that a demonstrated lack of candor supports the imposition of a polygraph requirement).

With regard to restricting access to Internet-connected devices, we consider relevant "whether the defendant did more than merely possess child pornography and whether the restriction is a total ban." United States v. Notman, 831 F.3d 1084, 1089 (8th Cir. 2016) (citing United States v. Ristine, 335 F.3d 692, 696 (8th Cir. 2003)). When analyzing the first factor a court may consider the sadistic or masochistic nature of the depictions in question. Id. Both factors support the district court's modified condition. The district court found that Newell used a computer, that the images were shared on LimeWire, and that the images were of a sadistic and masochistic nature. The modified condition permits Newell to access the Internet, but only with the prior approval of his probation officer. We conclude Special Condition 5 does not involve a greater deprivation of liberty than is reasonably necessary to advance deterrence and protect the public. Cf. United States v. Lacy, 877 F.3d 790, 794 (8th Cir. 2017) (citing United States v. Durham, 618 F.3d 921, 944 (8th Cir. 2010)).

## III.   Conclusion

We affirm the district court's conclusion that Newell violated his conditions of supervised release and the court's modification of Newell's conditions of supervised release.

_____