# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2956

_____

United States of America

*Plaintiff - Appellee*

v.

William Trimble, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 16, 2021
Filed: June 25, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

William Trimble, Jr. appeals the district court's[1] judgment revoking his supervised release. Trimble contends the district court erred when it relied on evidence he believes was derived from his polygraph examinations contrary to a

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

condition of his supervision, which stated "[t]he results of polygraph examinations will not be used for the purpose of revocation of supervised release." We affirm.

## I.  BACKGROUND

In 2013, Trimble pled guilty to possessing child pornography and was sentenced to a 60 month term of imprisonment followed by five years of supervised release. In September 2019, Trimble was released back to supervision after a previous revocation. As part of his supervision, Trimble was required to "participate in a sex offender treatment program, to include psychological testing and polygraph examinations, as directed by the U.S. Probation Officer." The special condition that required the submission to polygraph examination also provided that "[t]he results of polygraph examinations will not be used for the purpose of revocation of supervised release."

Trimble submitted to polygraph examinations on July 30 and August 14, 2020. During the first examination, the polygrapher detected that Trimble's answers were deceptive in response to questions about contact with minors, possession of an internet capable device, and the purchase of pornography. After Trimble left the examination, he made an unsolicited call to his probation officer and reported that he had contact with an 11-year-old granddaughter of a woman who worked at the motel where Trimble resided. When asked by the probation officer, the grandmother confirmed Trimble's contact with the minor.

After the second polygraph examination, Trimble participated in an interview with his probation officer and the polygrapher. During the interview, Trimble reported additional contact with the minor, which the grandmother once again corroborated. He also disclosed that he had used a cell phone that he purchased for his roommate (as well as another phone he claimed to have found in a dumpster) to access the internet and view child pornography. Trimble had previously disclosed to

his probation officer a few months before this interview that he had possessed his roommate's cell phone.

In August 2020, Trimble's probation officer requested that the district court revoke Trimble's supervision based on allegations that Trimble had not complied with the following terms of supervision: (1) failing to comply with sex offender treatment; (2) unapproved contact with minors; (3) possessing an internet capable device; (4) using the internet; (5) viewing child pornography; and (6) committing a new law violation for possessing child pornography. Trimble denied the allegations.

At the revocation hearing, the parties disputed what evidence was admissible under the special condition stating "[t]he results of polygraph examinations will not be used for the purpose of revocation of supervised release." The government argued that the condition required only the exclusion of the results of the polygraph examination. Trimble interpreted the condition more broadly, arguing it operated to exclude not only the polygrapher's detection of deception but also Trimble's statements during the polygraph examinations and interviews, and all evidence derived from his statements during the polygraph examinations, including his subsequent admissions to his probation officer related to contact with the minor and the grandmother's corroborating statements. According to Trimble, the condition granted him "immunity" coextensive with the Fifth Amendment because otherwise the requirement to participate in polygraph examinations would violate his Fifth Amendment right against self-incrimination.

The district court stated that, while it agreed with the government's interpretation, the special condition was potentially confusing. Thus, it did not consider the polygrapher's detection of deception or Trimble's statements during the polygraph examinations and interviews. The court did, however, consider Trimble's unsolicited statements to his probation officer (about the cell phone and minor) as well as the grandmother's corroborating statements. The court found this evidence

sufficient to establish violations for possession of an internet capable device and contact with a minor[2] and revoked Trimble's supervised release, sentencing him to a 10 month term of imprisonment followed by four years' supervised release.

Trimble concedes that sufficient evidence exists independent of the polygraph examinations to support the violation for possession of an internet capable device based on his voluntary admission (before the polygraph examinations) that he possessed his roommate's cell phone. In this appeal, Trimble argues that the district court erred in relying on his admissions about contact with the minor and the grandmother's statements to find he had contact with a minor and revoke his supervised release.

## II.    DISCUSSION

We generally review the district court's decision to revoke supervised release for an abuse of discretion and "subsidiary factfinding as to whether or not a violation occurred" for clear error. United States v. Black Bear, 542 F.3d 249, 252 (8th Cir. 2008) (citations omitted). We review constitutional claims *de novo*. See United States v. Fonder, 719 F.3d 960, 961 (8th Cir. 2013).

Trimble argues the district court granted him immunity coextensive with the Fifth Amendment privilege for his answers during the polygraph examinations. Trimble contends the district court violated his Fifth Amendment right against self-incrimination when it considered evidence derived from the polygraph answers even though his special condition stated that the results would not be used for the purpose of revoking supervised release.

Trimble misapprehends the contours of the claimed immunity arising out of the special condition, which limits any immunity to "the results of polygraph

_____

[2]The district court dismissed the remaining violations.

-4-

examinations." There is no evidence in this record that the district court used any result of a polygraph examination. The district court excluded the results of the examinations and anything said during the examinations. In other words, it considered neither the formal results of the examinations (the polygrapher's detection of deception) nor the statements Trimble made during the examinations and the follow-up interviews. The district court only considered Trimble's admissions to his probation officer about his contact with the minor and the grandmother's corroborating statements. Those were not derived from the polygraph examination; instead, they were voluntary and unsolicited admissions to the probation officer.

While Trimble asserts that his admissions and the grandmother's statements are inadmissible under a Kastigar-type[3] immunity analysis as derivative evidence from compelled testimony, the district court granted no such immunity when it imposed the condition at issue here, nor did it have authority to do so. Even if we assume immunity was to be "coextensive with the Fifth Amendment" (like Kastigar) for revocation purposes, the Fifth Amendment was not implicated here. The statements at issue pertained to violations of Trimble's conditions of supervised release. The Fifth Amendment privilege only applies to statements which could expose Trimble to a future criminal prosecution. See Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984); see also United States v. Lee, 315 F.3d 206, 213 (3d Cir. 2003) (noting that Fifth Amendment privilege would not apply to questions about contact with minors and internet use).

## III.   CONCLUSION

For the foregoing reasons, we affirm.

_____

---

[3]Kastigar v. United States, 406 U.S. 441, 462 (1972) (holding that immunity under 18 U.S.C. § 6002 is coextensive with the Fifth Amendment).